## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| SUMI CHO, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 18 C 8117** |
| **v.** | ) | |
| | ) | **Judge John Z. Lee** |
| JENNIFER ROSATO PEREA and | ) | |
| DEPAUL UNIVERSITY, | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Sumi Cho filed this lawsuit against DePaul University and Jennifer Rosato Perea pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, bringing claims of discrimination, retaliation, and breach of contract. Defendants have filed a motion to dismiss Cho's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motion [22] is granted in part and denied in part.

## <u>Background</u>[1]

### I.    Cho's Employment at DePaul

Cho, who is Asian-American, is a tenured full professor of law at the DePaul University College of Law ("the Law School"). Compl. ¶ 1, ECF No. 1. Rosato Perea is the Dean of the Law School. *Id.* ¶ 2. While employed at the Law School, Cho has been actively engaged in antidiscrimination and diversity efforts, which has at times involved criticism of the Law School's leadership. *Id.* ¶¶ 8–21. Cho alleges that, as a result of her participation in these efforts, faculty and administrators at the Law School and at DePaul have excluded, ostracized, and ignored her.

---

[1]    The following facts are taken from the amended complaint and are accepted as true at this stage. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (stating that, at the motion-to-dismiss stage, the court "accept[s] as true all well-pleaded facts alleged").

*Id.* ¶¶ 22–25.  In March 2015, Cho filed a charge of discrimination and retaliation with the United States Equal Employment Opportunity Commission ("EEOC").  *Id.* ¶ 26.

As a tenured full professor, Cho's employment is governed by the DePaul University Faculty Handbook ("the Handbook"), which creates an employment contract between Cho and DePaul.  *Id.* ¶ 27.  The Handbook guarantees a professor's right to academic freedom, and "[a]ny judgment based on a faculty member's ideological and political positions is a violation of" that freedom.  *Id.* ¶¶ 27–31.

Additionally, the Handbook sets forth DePaul's system of "shared governance."  *Id.* ¶ 32. Faculty members at DePaul "advise and otherwise participate in the oversight of administrators, the establishment or dissolution of administrative offices, and major changes to the administrative structure, including the search for senior administrative positions."  *Id*.  These responsibilities are largely delegated to a Faculty Council, which has the ability to form sub-committees or *ad hoc* committees to carry out various duties.  *Id.* ¶ 33.  Service on "high-profile committees" such as those created to search for deans, is "critical" because it can raise a professor's profile within her academic unit, the university, or the broader academic community.  *Id.* ¶ 34.

## II.     The Dean Search Committee

In March 2014, Cho was nominated to participate on the Law School's Dean Search Committee.  *Id.* ¶ 35.  The committee was made up of Law School faculty, alumni, and other stakeholders and tasked with selecting the next Dean of the Law School.  *Id*.  According to Cho, the committee-selection procedures were "designed to exclude those faculty who opposed discriminatory practices" at the Law School.  *Id.* ¶ 36.  Two faculty members, Susan Thrower and Steven Resnicoff (both of whom are white), were responsible for receiving nominations and

determining which faculty names to forward to the Acting Provost, who then appointed members to the committee. *Id.*

Cho states that Thrower and Resnicoff "were given a free hand to arbitrarily exclude individuals" from the list they submitted to the Acting Provost. *Id.* ¶ 37. No selection criteria were announced to the faculty prior to Thrower's and Resnicoff's selections, and only after Cho filed an internal complaint with DePaul's Office of Institutional Diversity and Equity ("OIDE")[2] did Thrower and Resnicoff "concoct[]" criteria for selection. *Id.* These criteria included "diversity, ability to work effectively in a committee setting, past participation in the well-being of the law school, and good judgment." *Id.*

A total of 22 nominations were submitted to Thrower and Resnicoff. *Id.* ¶ 38. They, in turn, forwarded ten nominations the Acting Provost. *Id.* This list did not include Cho. *Id.* The list was comprised of eight white faculty members and two black faculty members, who Cho asserts had "no record of speaking out on issues of discrimination" at the Law School. *Id.* Furthermore, according to Cho, the white faculty members included several "known neither for their judgment nor their ability to work effectively in committee settings." *Id.* ¶ 39. This was the second time Cho had been denied consideration for service on a dean search committee. *Id.* ¶ 40.

After Cho made her complaint to OIDE, an investigator, Arlette Johnson, looked into Cho's claim that she had been wrongfully excluded from the Dean Search Committee. *Id.* ¶ 41. Johnson concluded that Thrower's and Resnicoff's reliance on the selection criteria was "a pretext for retaliation based on Professor Cho's advocacy for diversity and against discrimination" at the Law School. *Id.* But before Johnson could memorialize her findings in a report, she took administrative leave, and OIDE engaged an outside investigator to take over. *Id.* ¶ 42.

---

[2]     OIDE "is tasked with investigating claims of discrimination or harassment on the basis of status protected by federal, state, or local law." Compl. ¶ 37.

The new investigator, Rachel Yarch, had previously represented DePaul in a race-discrimination lawsuit where it had been named as a defendant. *Id.* Less than two weeks after taking over the investigation, and without speaking to Johnson or interviewing any witnesses, Yarch concluded that Thrower and Resnicoff had not retaliated or discriminated against Cho. *Id.*

### III.  Opposition to Applications for Tenure

In January 2017, two professors at the Law School applied for tenure: Julie Lawton, who is African-American, and Daniel Morales, who is Latino. *Id.* ¶ 44. As a tenured full professor, Cho was tasked with evaluating and voting on both professors' applications. *Id.* Cho had "serious doubts" about the qualifications of both professors and voted against their tenure; she also voted against Lawton's application for promotion to full professor. *Id.* ¶ 46. Cho was not the only one. Three other faculty members voted against granting Lawton tenure, and seven opposed her promotion to full professor. *Id.* As for Morales, three others voted against tenure, and a fourth abstained from voting. *Id.* ¶¶ 46–47. Additionally, during the votes, other faculty members expressed concerns about the performance of both applicants. *Id.* ¶ 48. In the end, a majority of the faculty voted to grant Lawton and Morales tenure. *Id.* ¶ 59.

Under the Law School's procedures, after the faculty votes on a tenure application, it is sent to the University Board of Promotion and Tenure ("UBPT"), which reviews the file and forwards it to the Provost. *Id.* ¶ 50. The Provost has the authority to overturn the decision of the UBPT only in extraordinary circumstances. *Id.* Because Cho disagreed with the majority of faculty regarding Lawton and Morales's candidacies for tenure, she filed a minority report in opposition to their applications—a right guaranteed to her by the Handbook. *Id.* ¶ 49. In theory, a minority report could cause the UBPT or the Provost to deny tenure to a candidate; in practice, however, the position articulated in a minority report is rarely adopted. *Id.* ¶ 50.

In an "unprecedented" move, according to Cho, she and a colleague were prosecuted for misconduct due to their opposition to Lawton's and Morales's tenure applications. *Id.* ¶ 51. In response to Cho's minority report, Morales filed an OIDE complaint against her in March 2017. *Id.* ¶ 52. The complaint stated that Cho had engaged in "racially hostile conduct" toward Morales throughout his time at DePaul, and that Cho's opposition to his tenure application was "motivated by his refusal to subscribe to her views of institutional racism within the academy or her ostensible views of how junior faculty of color should behave within the academy." *Id.* ¶ 53. An independent investigator, Nigel Telman, dismissed the complaint. *Id.*

## IV.     Removal from Associate Deanship

On March 31, 2017, Dean Rosato Perea terminated Cho as the Associate Dean for Non-JD programs, a position she had held since 2015. *Id.* ¶¶ 54–55. Rosato Perea stated that the termination was due to Cho being "unnecessarily adversarial, disruptive, and inflexible." *Id.* Cho asserts, however, that other professors who were appointed as associate deans by Rosato Perea exhibited these same characteristics, demonstrating that the given reason was a pretext for discrimination. *Id.*

## V.     Investigations of Cho

### A.     OIDE and Powers Investigations

In April 2017, DePaul hired two teams of attorneys to investigate ongoing issues at the Law School. *Id.* ¶ 56. The first was led by William Powers, a former university president and law school dean. *Id.* Powers was tasked with determining whether DePaul should initiate Chapter 4 procedures[3] against certain faculty at the Law School. *Id.* The second team, led by Telman, was tasked with investigating the March 2017 OIDE complaint made by Morales, along with separate

---

[3]     Chapter 4 of the Handbook sets out the processes by which DePaul may impose sanctions against tenured professors, including suspension or termination.

complaints he and Lawton had made against another faculty member who had opposed their applications for tenure. *Id.* ¶¶ 46, 56.

During this time, Cho complained to the Provost about discrimination at the Law School and provided the Provost and Powers with a list of witnesses who could support and corroborate her complaints. *Id.* ¶ 57. Neither contacted any of these witnesses. *Id.* To date, Cho has not been informed of the results of Powers's investigation, because the Provost has not released the contents of Powers's report. *Id.* ¶ 58. The Provost, however, has shared the contents of the report with Rosato Perea. *Id.*

As for the OIDE investigation, it "cleared Professor Cho of racial discrimination and harassment charges in connection with her opposition to Professor Morales's application for tenure." *Id.*

### B. Chapter 4 Investigation

Despite the fact that the OIDE investigation had cleared Cho of wrongdoing, Rosato Perea announced on August 31, 2017—two months after the conclusion of the OIDE investigation—that she was opening a Chapter 4 investigation into "allegations of bullying, discord[,] and toxicity" on the part of Cho. *Id.* ¶ 59. Rosato Perea stated that this investigation was based on numerous complaints she had received during the 2017 academic-year tenure process. *Id.*

The investigation concluded on November 16, 2017, when Rosato Perea issued a Statement of Charges ("the Charge"), concluding that Cho had engaged in "misconduct" in violation of the Handbook by engaging in a "pattern of bullying" rising to the level of "extreme intimidation and aggression." *Id.* ¶ 60. The Charge alleges that Cho sought to destroy Lawton's and Morales's careers by opposing their tenure applications because they did not subscribe to her views on race or institutional racism at the Law School. *Id.* ¶ 61. According to Cho, the conduct alleged in the

6

Charge does not amount to a violation of the Handbook. *Id.* ¶ 62. Additionally, to the extent Rosato Perea felt that Cho had engaged in conduct prohibited by the Handbook, she had an obligation to counsel Cho "before allowing the 'pattern' to grow to a point where Chapter 4 proceedings were justified." *Id.* ¶ 63. Moreover, Cho disputes that she ever engaged in such conduct and states that her personnel file contained no documentation of such conduct at the time the Charge was issued. *Id.* ¶¶ 64–65.

Although Rosato Perea claims to have interviewed twenty witnesses and reviewed numerous documents over the course of her investigation, she refused to interview Cho and did not request documents from her. *Id.* ¶ 66. What is more, the Charge indicates that Rosato Perea was a witness to Cho's alleged wrongdoing, thereby positioning Rosato Perea as both witness and finder of fact. *Id.* ¶ 67. According to Cho, this demonstrates that the outcome of the investigation was "predetermined." *Id.* ¶ 68.

In addition, much of the conduct that forms the basis of the Charge occurred before the current Handbook was adopted in June 2016. *Id.* ¶ 69. The prior version of the Handbook did not define misconduct to include "a pattern of extreme intimidation and aggression toward other members of the university community." *Id.* Therefore, Cho states, the Charge "attempts to retroactively change the terms" of her employment. *Id.*

According to Cho, other faculty members who have engaged in similar behavior to that described in the Charge have not been subject to Chapter 4 procedures. *Id.* ¶¶ 71–72, 80. Specifically, she states, other faculty have "criticized and attempted to terminate faculty of color for perceived and fabricated deficiencies," but have not faced disciplinary action. *Id.* ¶ 71. Additionally, "white faculty have committed ethical violations . . . and gross acts of discrimination," but have faced no consequences. *Id.*

7

Under the Handbook, when a Chapter 4 charge is filed against a faculty member, she has two weeks to prepare a rebuttal. *Id.* ¶ 73. And the Handbook requires the Dean to "conduct a detailed review of the charges and the rebuttal, if any, and file a report" within four weeks of the presentation of charges. *Id.* Once the report is prepared, the faculty member is given two weeks to examine the report and evidence and provide a final statement, before a decision is made. *Id.*

Ultimately, the Handbook requires the Dean to make a decision within eight weeks of the presentation of charges. *Id.* According to Cho, Rosato Perea's decision was due (at the latest) by January 25, 2018; however, she did not issue the decision until February 10, 2018. *Id.* ¶¶ 74–75. Furthermore, Rosato Perea failed to provide Cho with certain evidence during the Chapter 4 process, including witness statements from faculty members who had spoken with Rosato Perea. *Id.* ¶ 75.

While the Dean has to complete her analysis in eight weeks, the Provost has ten weeks to render a decision once a charge is filed. Here, the decision was due by February 8, 2018, but the Provost did not issue his decision until March 1, 2018, when he decided to refer the charge to a faculty hearing panel. *Id.* ¶¶ 77, 81.

Following the investigation, Rosato Perea recommended that DePaul suspend Cho for two years, without pay, followed by a two-year absence from shared governance. *Id.* ¶¶ 70, 76. According to Cho, this suspension would cause "irreparable harm to her standing in the academic community." *Id.* ¶ 82. She further states that Rosato Perea's and DePaul's actions have caused "significant mental anguish" and "disruption to her daily life." *Id.* ¶ 83.

Based on the foregoing, Cho brings retaliation claims under 42 U.S.C. § 1981 against Rosato Perea and DePaul (Counts I and III); a Title VII retaliation claim against DePaul (Count II); § 1981 discrimination claims against Rosato Perea and DePaul (Counts IV and VI); a Title VII

discrimination claim against DePaul (Count V); and a common-law breach-of-contract claim against DePaul (Count VII). *See generally id.* ¶¶ 84–119.

## Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## Analysis

### I. Timeliness of Title VII Claims (Counts II and V)

In Count II, Cho alleges that DePaul retaliated against her for complaining about discrimination and advocating for diversity at the Law School. Compl. ¶ 91. She specifically claims that DePaul's "refus[al] to allow [her] to join the Dean Search Committee" was retaliatory. *Id.* ¶ 90. In Count V, Cho alleges that DePaul discriminated against her on the basis of race by refusing to allow her to join the committee, and by "burying Ms. Johnson's conclusions" about Cho's exclusion from that committee. *Id.* ¶¶ 105–06.

As an initial matter, Defendants argue that these Title VII claims are time-barred. Title VII requires that a complainant submit a charge of discrimination to the EEOC within 300 days of the alleged act(s) of discrimination in order to file suit. 42 U.S.C. § 2000e-5(e); *Carlson v. Christian Bros. Servs.*, 840 F.3d 466, 467 (7th Cir. 2016). Here, Defendants provide Cho's EEOC charge, which shows that it was filed on March 24, 2015. Defs.' Mem. Supp. Mot. Dismiss, Ex. C, ECF No. 23-3. Accordingly, Defendants contend, Plaintiff's Title VII claims are time-barred because they are based on events that occurred prior to May 28, 2014 (300 days prior). In support, Defendants attach certain emails that purport to show that the nomination decision regarding the Dean Search Committee occurred prior to that date, as did the OIDE investigation of Cho's complaint against Thrower and Resnicoff. Cho objects to the consideration of these documents and argues that it is not apparent from her complaint that the claims are untimely.

The Seventh Circuit has held that a court "may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). Defendants contend that the EEOC complaint and the emails attached to their motion to dismiss are central to Cho's complaint. They are half right.

With respect to the EEOC charge, the Court agrees. Cho specifically refers to the EEOC charge in her complaint. *See* Compl. ¶ 26. And courts have repeatedly concluded that in Title VII cases, an EEOC charge is central to the complaint. *See, e.g.*, *Davis v. Palos Health*, No. 18 C 4345, 2019 WL 214916, at \*5 (N.D. Ill. Jan. 16, 2019); *Nolan v. City of Chi.*, No. 15 CV 11645, 2017 WL 569154, at \*4 n.1 (N.D. Ill. Feb. 13, 2017); *Flores v. Bd. of Trs. of Cmty. Coll. Dist. No. 508*, 103 F. Supp. 3d 943, 948–49 (N.D. Ill. 2015).

On the other hand, the Court declines to consider the two emails attached to Defendants'
motion to dismiss. First, Defendants attach an email from Resnicoff dated March 17, 2014, stating
which Dean Search Committee nominations were being forwarded on for ratification. *See* Defs.'
Mem. Supp. Mot. Dismiss, Ex. A, ECF No. 23-1. Second, Defendants provide a letter from Yarch,
sent by email on May 16, 2014, stating that the OIDE investigation of Cho's complaint had been
completed and that no violation had been found. *See id.*, Ex. B, ECF No. 23-2. Unlike the EEOC
complaint, these documents are not referenced in Cho's complaint. Rather, Cho alleges only that
she was excluded from the list of nominees forwarded to the Acting Provost, and that Yarch
concluded that Resnicoff and Thrower had not retaliated against Cho. Compl. ¶¶ 38, 42. "If [a]
defendant's exhibits could be considered just because they shed further light on the circumstances
surrounding" the events alleged in a complaint, "anything else bolstering the defendant's position
could as well, and incorporation would become a backdoor to a one-sided summary judgment
procedure[.]" *Ware v. Lake Cty. Sheriff's Office*, No. 15 C 9379, 2017 WL 914755, at \*3 (N.D.
Ill. Mar. 8, 2017). Because the emails are not central to Cho's complaint, the Court declines to
consider them at the pleading stage.

Moving to the complaint, Cho does not indicate when, exactly, the Dean Search Committee
selection process concluded, or when the OIDE investigation of her complaint was completed. A
plaintiff is "not required to negate an affirmative defense," such as the statute of limitations, "in
his or her complaint." *Stuart v. Local 727, Int'l Bhd. of Teamsters*, 771 F.3d 1014, 1018 (7th Cir.
2014). That said, dismissal of a claim may be appropriate if the plaintiff pleads himself "out of
court by alleging facts in the complaint that are sufficient to establish an affirmative defense."
*O'Donnell v. City of Country Club Hills*, No. 12 C 3523, 2013 WL 5289522, at \*3 (N.D. Ill. Sept.

11

18, 2013) (internal quotation marks omitted). Cho has not done so here. Accordingly, the Court denies Defendants' motion to dismiss Cho's Title VII claims (Counts II and V) on this basis.

## II.     Discrimination Claims (Counts IV, V, and VI)

In Count IV, Cho brings a § 1981 claim based on Defendants' termination of her associate deanship, alleging that her "failure to comport herself in the stereotypical manner" in which Defendants "believe an Asian American employee should comport herself" was a motivating factor. Compl. ¶¶ 100–01. In Count V, she alleges that DePaul violated Title VII by excluding her from the Dean Search Committee for a discriminatory reason. And in Count VI, she alleges that Defendants violated § 1981 by "making [her] the target of multiple internal investigations in a seven month period," and "recommending and referring [her] to the faculty for a hearing on the suspension of her employment, but not subjecting her similarly-situated non-Asian colleagues to similar treatment." *Id.* ¶ 110.

To state a claim for employment discrimination under either Title VII or § 1981, a plaintiff must show that (1) she is a "member of a class protected by the statute," (2) she "has been the subject of some form of adverse employment action" or has been subjected to a hostile work environment, and (3) the employer "took this adverse action on account of the plaintiff's membership in the protected class." *Morgan v. SVT, LLC*, 724 F.3d 990, 995 (7th Cir. 2013) (Title VII); *see also Williams v. Waste Mgmt. of Ill., Inc.*, 361 F.3d 1021, 1028 (7th Cir. 2004) ("Section 1981 claims are evaluated under the same rubric as Title VII claims."). Here, Defendants argue, Cho has failed to allege that she suffered an adverse employment action.

The actions that form the basis of Cho's discrimination claims are (1) her removal as Associate Dean (Count IV); (2) her exclusion from the Dean Search Committee (Count V); and (3) the investigations and sanction recommendation (Count VI). Defendants contend that none of

these "rise to the level of a materially adverse employment action." Defs.' Mem. Supp. Mot. Dismiss at 6, ECF No. 23.

### A.      Removal as Associate Dean

Cho asserts that she was removed as Associate Dean for Non-JD programs because of her non-conformity to racial stereotypes. Defendants argue this does not constitute an adverse employment action because Cho "does not allege any tangible, realized consequences flowing from Dean Rosato Perea's decision" to terminate the appointment. Defs.' Mem. Supp. Mot. Dismiss at 6–7. But Cho's complaint clearly states that the position provided her with "additional remuneration above and beyond her salary as a tenured professor," and that removal from the position denied her "the opportunity to earn substantial compensation and benefits." Compl. ¶¶ 54, 102. Although it is "impossible" to create a "precise list of activities that constitute adverse employment actions," *Atanus v. Perry*, 520 F.3d 662, 677 (7th Cir. 2008), the Seventh Circuit has recognized that such actions can include "reduction in compensation, fringe benefits, or other financial terms of employment." *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453–54 (7th Cir. 2011) (citation omitted). Accordingly, by stating that she was removed from a position that provided her with additional remuneration and compensation, Cho has sufficiently alleged that she suffered an adverse employment action. The veracity of these allegations undoubtedly will be the subject of discovery, but the motion to dismiss is denied as to Count IV.

### B.      Exclusion from Dean Search Committee

Defendants similarly argue that Cho did not suffer an adverse employment action when she was not selected for the Dean Search Committee. "[T]he nomination decision," Defendants contend, "did not impact any of the terms or conditions of [Cho's] employment," and her allegation

that service on such a committee can raise a professor's profile and lead to other opportunities is "speculative." Defs.' Mem. Supp. Mot. Dismiss at 7.

As Plaintiff points out, *Bryson v. Chicago State University*, 96 F.3d 912 (7th Cir. 1996), is instructive. In that case, a tenured full professor alleged that banishment from university committee work was an adverse employment action under Title VII. *Id.* at 916. In reversing the grant of summary judgment to the university, the Seventh Circuit recognized the importance committee work can have for tenured professors:

> Universities have few "carrots" to dangle in front of tenured faculty members who reach full professorhood. The subtle indicia of job status and reward thus may, in a particular institution, take on an importance that may be far greater in context than would appear on the outside—indicia like . . . committee assignments.

*Id.* at 916–17.

The rationale of *Bryson* is compelling. Here, Cho alleges that she was denied participation on the Dean Search Committee, a "high-profile committee" that can "raise [a professor's] profile within the academic unit, within the University, or within the academic community as a whole," and can "lead to other leadership positions . . . , additional remuneration, and the opportunity to further spread the professor's ideas." Compl. ¶¶ 34–43. As *Bryson* acknowledges, service on such committees can be valuable for tenured full professors like Cho, because it "may play a part in preparing for an administrative academic career." 96 F.3d at 917.

Defendants' attempt to distinguish *Bryson* is unpersuasive. They argue that, unlike the plaintiff in that case, Cho was not *discharged* from a committee; rather, she simply was not selected for one. But *Bryson* is not so limited. The Court of Appeals discussed the importance of committee work and acknowledged that it can lead to further career opportunities in university administration. As the Court of Appeals recognized, "[d]epriving someone of the building blocks" for such a career "is just as serious as depriving her of the job itself." *Id.* at 916–17.

14

Furthermore, this case is more similar to *Bryson* than the cases on which Defendants rely. For example, in *Williams v. City of Chicago*, No. 16-cv-8271, 2017 WL 3169065 (N.D. Ill. July 26, 2017), the court found that the plaintiff, a sanitation-truck driver, did not suffer an adverse employment action when she was denied training. *Id.* at *4. And in *Adam v. Obama for America*, 210 F. Supp. 3d 979 (N.D. Ill. 2016), the plaintiff, an unpaid campaign worker, was demoted from "intern" to "volunteer." *Id.* at 984. Neither case takes into account the unique employment context in which tenured full professors like Cho are situated.

For these reasons, the Court finds that Cho has sufficiently alleged that exclusion from the Dean Search Committee was an adverse employment action. Defendants' motion to dismiss is denied as to Count V.

### C. Investigations and Recommendation for Sanctions

Cho's complaint describes three separate investigations, the last of which resulted in a recommendation that she be suspended as a sanction. Defendants contend that these investigations are not adverse employment actions, and that the recommended suspension is not inevitable (and therefore too speculative to support a discrimination claim).

Defendants rely on *Ludlow v. Northwestern University*, in which another court in this district concluded that "an investigation by an employer, without more, is not an adverse action." 79 F. Supp. 3d 824, 834 n.5 (N.D. Ill. 2015). Similarly, in *Keeton v. Morningstar, Inc.*, the Court of Appeals concluded that an employer's internal investigation did not support a retaliation claim because there was "no evidence that the investigation was anything other than a legitimate attempt to discover" whether the employee had misused company software. 667 F.3d 877, 885–86 (7th Cir. 2012).

Cho cites several cases suggesting that bad-faith investigations are actionable under Title VII, but those cases are distinguishable because the investigations at issue resulted in actual disciplinary action. *See Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 645 (7th Cir. 2013) (plaintiff was suspended and terminated); *Vasquez v. Empress Ambulance Serv., Inc.*, 835 F.3d 267, 276 (2d Cir. 2016) (plaintiff was terminated); *Zamora v. City of Houston*, 798 F.3d 326, 335 (5th Cir. 2015) (plaintiff was suspended); *Nguyen v. AK Steel Corp.*, 735 F. Supp. 2d 346, 352–53 (W.D. Pa. 2010) (plaintiff was suspended and terminated). Cho also cites to *Probst v. Reno*, 917 F. Supp. 554, 561 (N.D. Ill. 1995), but that case was limited to determining the appropriate amount of compensatory damages.

By contrast, the holdings in *Ludlow* and *Keeton* are more applicable. In both of those cases, the courts emphasized that the plaintiffs had not been subjected to any discipline as a result of the investigations. *See Ludlow*, 79 F. Supp. 3d at 834 ("Ludlow does not allege an adverse employment action related to the 2014 investigation—indeed, in contrast to the disciplinary actions that resulted from the 2012 investigation, Ludlow does not mention any discipline from the 2014 investigation."); *Keeton*, 667 F.3d at 886 ("[N]o adverse action of any kind was taken against Keeton as a result of the investigation and the investigation itself was not an adverse action."). Similarly, here, Cho has not alleged that she has faced any discipline from either the Powers or OIDE investigations. As for the Chapter 4 investigation by Rosato Perea, Cho alleges only that it resulted in Rosato Perea *recommending* that Cho receive a two-year suspension. She does not allege that she *was* suspended or that she faced any actual consequences as a result of the investigation.

Relatedly, the recommendation of sanctions is not an adverse employment action, because it merely raises the possibility that Cho may be disciplined. And while the possibility of discipline

16

can be stressful and upsetting for an employee, it is not enough to support a discrimination claim. *See, e.g.*, *Cole v. Illinois*, 562 F.3d 812, 817 (7th Cir. 2009) (stating that placement on a performance-improvement plan is not an adverse employment action because discipline such as suspension or termination is not "an inevitable consequence" of the reprimand). Cho's suspension from teaching at the Law School is not an "inevitable consequence" of Rosato Perea's recommendation; rather, as Cho alleges in her complaint, a "formal faculty hearing to determine whether to impose the sanction" must be held before any further action is taken. Compl. ¶ 81. While this is a developing story, as of the time of her complaint, Cho had not suffered any "tangible job consequences" as a result of the investigations. *Whittaker v. N. Ill. Univ.*, 424 F.3d 640, 648 (7th Cir. 2005) (internal quotations and citation omitted). Accordingly, her discrimination claim based on the investigations and sanction recommendation (Count VI) is dismissed.

## III. Retaliation Claims (Counts I, II, and III)

In Count I, Cho alleges that DePaul and Rosato Perea retaliated against her by removing her as Associate Dean, thereby violating § 1981. In Count II, she alleges that DePaul violated Title VII by "refusing to allow [her] to join the Dean Search Committee." Compl. ¶¶ 89–93. And in Count III, she alleges that DePaul and Rosato Perea violated § 1981 by retaliating against her via a trio of internal investigations and a recommendation of suspension.

To state a claim for retaliation under Title VII or § 1981, a plaintiff must show that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the protected activity and the adverse employment action. *Williams v. Office of Chief Judge of Cook Cty., Ill.*, 839 F.3d 617, 626 (7th Cir. 2016); *Williams*, 361 F.3d at 1028 (explaining that § 1981 claims are evaluated under the Title VII standard). Here, Defendants contend, Cho has failed to meet the first two elements.

17

### A.    Protected Activity

Defendants first argue that Cho has failed to allege that she engaged in protected activity. Cho's complaint states that Defendants retaliated against her for "complain[ing] about discrimination" and "advocat[ing] for diversity."  Compl. ¶¶ 86, 91, 96.  This is insufficient, Defendants contend, because it "does not identify what protected activity, if any, she engaged in that allegedly caused the retaliatory conduct."  Defs.' Mem. Supp. Mot. Dismiss at 9.

While Defendants are correct that, for a retaliation claim, "[t]he protected activity must be specifically identified," *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) (citation omitted), they are incorrect that Cho's complaint falls short.  Cho has alleged numerous specific anti-discrimination and pro-diversity activities she engaged in while at the Law School, some of which occurred around the time of the events underlying this case.  *See* Compl. ¶¶ 8–26.  For example, Cho alleges that she (1) objected to the forced resignation of an Asian-American female professor in 2013; (2) supported students who complained about discriminatory selection processes for leadership positions at the *DePaul Law Review*; (3) organized faculty to speak out against the "scapegoating of African American students" who protested the decision to invite a controversial speaker to campus in 2016; (4) supported Muslim law students and a Law School staff member in filing an OIDE complaint about an event held at the law school in 2016; and (5) filed an EEOC complaint in 2015.  *Id.* ¶¶ 15, 19–21, 26.

But more broadly, Cho's complaint paints a picture of someone with a long history of raising concerns about discrimination at the Law School, and a reputation for doing so.  This is protected activity under Title VII.  *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1007 (7th Cir. 2000) ("Title VII protects persons . . . from retaliation for complaining about the types of discrimination it prohibits.").  What is more, Cho describes an ongoing pattern of retaliatory

behavior at the Law School, and her claims must be "viewed through that lens." *Carlson*, 758 F.3d at 829. Because Cho's complaint sufficiently describes the protected activity in which she has engaged during her employment at DePaul, the Court denies Defendants' motion to dismiss on this ground.

      **B.**      **Adverse Employment Action**

Defendants also argue that Cho's complaint fails to allege that she suffered an adverse employment action when she was (1) terminated as Associate Dean (Count I); (2) excluded from the Dean Search Committee (Count II); and (3) subjected to three internal investigations, one of which resulted in a recommendation of suspension (Count III). In assessing Cho's discrimination claims, which are based on the same events, the Court concluded she had sufficiently alleged that she suffered adverse employment actions based upon the above. Accordingly, the Court holds that Counts I and II sufficiently allege adverse employment actions, and Defendants' motion to dismiss is denied on this basis.

Count III, which is based on Cho's being subjected to multiple internal investigations and receiving a recommendation for suspension, presents a closer question. Although Cho has failed to state a discrimination claim based on these same events, "[t]he standard for adverse actions in the context of retaliation claims is not as high as the standard for discrimination claims." *Parks v. Speedy Title & Appraisal Review Servs.*, 318 F. Supp. 3d 1053, 1067 (N.D. Ill. 2018) (citing *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016)). In the context of a retaliation claim, "the challenged adverse action need not be one that affects the terms and conditions of employment, but it must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Poullard*, 829 F.3d at 856 (internal quotation marks and citation omitted).

But even applying that lower standard, the Court concludes that Cho has failed to state a retaliation claim based on the investigations and recommendation for suspension. "Federal law protects an employee only from retaliation that produces *an injury*." *Stephens v. Erickson*, 569 F.3d 779, 790 (7th Cir. 2009) (emphasis added). Here, as explained in Section II.C, Cho does not allege any injury or negative consequences stemming from the three investigations. As for the recommendation of suspension, the Seventh Circuit has made clear that, while "the possibility of discipline can be stressful," it is "not enough to support a claim for retaliation." *Poullard*, 829 F.3d at 856. Accordingly, Count III is dismissed.

## IV.    Breach of Contract Claim (Count VII)

Count VII alleges a breach-of-contract claim against DePaul. To state a breach-of-contract claim under Illinois law,[4] a plaintiff must allege: "'(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages.'" *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004)). Defendants argue that Cho has failed to satisfy the third and fourth elements of the claim.

Cho alleges that the Handbook is a valid and enforceable contract between herself and DePaul, which DePaul breached in the following ways:

(i)     "allow[ing] its provost—rather than the dean of the academic unit—to initiate the misconduct investigation,"

(ii)    "failing to communicate to Professor Cho that her conduct could constitute extreme intimidation and aggression prior to that conduct metastasizing into a pattern,"

(iii)   "failing to conduct a good-faith investigation (including by allowing Dean Rosato [Perea] to serve as a witness and fact finder in the same proceeding),"

---

[4]     The parties do not dispute that Illinois law governs the breach-of-contract claim.

(iv)     "re-investigating claims of racial harassment after Professor Cho had been exonerated by the University agency charged with determining whether racial harassment occurred,"

(v)     "initiating an investigation alternatively motivated by racial and retaliatory animus,"

(vi)     "reaching a decision with respect to misconduct without giving Professor Cho an opportunity to be heard,"

(vii)     "attempting to discipline Professor Cho for conduct that was not misconduct at the time it allegedly occurred," and

(viii)     "failing to meet deadlines and . . . failing to allow Professor Cho access to the evidence against her."

Pl.'s Resp. Opp. Mot. Dismiss at 19–20 (citing Compl. ¶¶ 116–17), ECF No. 40.

Defendants argue that Cho's claim must be dismissed because she fails to identify any specific contractual provision or language that was violated. There is some disagreement in this district as to whether a plaintiff, who asserts a breach-of-contract claim, must identify the particular provision of the contract that was allegedly breached. *See Peerless Network, Inc. v. MCI Commc'n Servs., Inc.*, No. 14 C 7417, 2015 WL 2455128, at *5 (N.D. Ill. May 21, 2015) ("The law on the issue of whether it is necessary to cite specific contract provisions to state a claim for breach of contract is divided in this district.") (collecting cases). However, it is important to note that, while a plaintiff bringing a breach-of-contract claim is not required to attach a contract to her complaint, *see Arnold v. Janssen Pharm., Inc.*, 215 F. Supp. 2d 951, 962 (N.D. Ill. 2002), she must plead sufficient facts to establish that a breach occurred. *Int'l Capital Grp. v. Starrs*, No. 10 C 3275, 2010 WL 3307345, at *1 (N.D. Ill. Aug. 19, 2010).

Here, although Cho attaches the Handbook to her complaint and alleges various acts undertaken by Defendants, she fails to set forth facts establishing that Defendants' actions actually breached duties that they owed to her under the Handbook. The only specific section of the

Handbook cited in Cho's complaint is § 4.4.3, which sets forth time guidelines for Chapter 4 investigations. But the Handbook also states that "[a]ll procedures are to be carried out as expeditiously as is reasonably possible," and that "[a]ll time guidelines . . . are to be construed as recommended maximums." Compl., Ex. 1, Handbook at § 4.4.1, ECF No. 1. Thus, Cho's allegation that Defendants did not strictly comply with the deadlines set forth in § 4.4.3 does not establish a breach. What is more, aside from this reference to § 4.4.3, Cho's complaint does not tie her allegations to any obligation set forth in the (quite lengthy) Handbook.[5] Accordingly, she has failed to "provid[e] allegations that raise a right to relief above the speculative level." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). Without any indication of what obligations in the Handbook the Defendants breached, Cho's breach-of-contract claim is "merely possible, not plausible." *Burke v. 401 N. Wabash Venture, LLC*, No. 08 C 5330, 2010 WL 2330334, at *2 (N.D. Ill. June 9, 2010). Defendants' motion to dismiss is therefore granted as to Count VII.

## Conclusion

For the reasons stated herein, Defendants' motion to dismiss is granted in part and denied in part. Counts III, VI, and VII are dismissed without prejudice. In all other respects, the motion is denied. In the event that Cho wishes to file an amended complaint, she should file a motion seeking leave to do so, attaching a proposed amended complaint, within 21 days of this order.

**IT IS SO ORDERED.**                                    **ENTERED: 9/24/19**

                                                         _John Z. Lee_

                                                         **John Z. Lee**
                                                         **United States District Judge**

---

[5]     The Court notes that Cho has failed to respond to Defendants' argument concerning the lack of citation to any specific contractual provisions. In her response to Defendants' motion to dismiss, Cho merely restates the allegations of her complaint and makes the conclusory statement that based on those allegations, her claims "are actionable." Pl.'s Resp. Opp. Mot. Dismiss at 19–20.