**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| SUMI CHO,<br><br>       Plaintiff,<br><br>  vs.<br><br>JENNIFER ROSATO PEREA and DEPAUL UNIVERSITY,<br><br>       Defendants. | Case No. 1:18-cv-08117<br><br>Hon. John Z. Lee |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S FIRST MOTION TO COMPEL DISCOVERY

**INTRODUCTION**

DePaul conducted an extensive ESI search based on agreed search terms, answered more than 200 interrogatories and document requests, and produced more than 60,000 pages of documents. DePaul has taken on this significant burden despite this simple fact: No amount of discovery will change that ten separate decisionmakers reviewed the evidence against Plaintiff and all concluded Plaintiff violated the Faculty Handbook warranting a major sanction.

Desperate to avoid this conclusion yet again, Plaintiff now seeks to expand her discovery fishing net to capture a series of personnel issues, "complaints," or investigations that involve different decisionmakers in different decades; settlement agreements and informal resolutions with third-party employees and former employees; and Defendants' privileged communications and documents. Plaintiff's requests are burdensome and costly and do not provide any proportional value to this case. This Court should deny Plaintiff's Motion.

**BRIEF FACTUAL SUMMARY**

Jennifer Rosato Perea became the Dean of DePaul's College of Law on July 1, 2015. In 2016, College of Law Professors Julie Lawton (African American) and Daniel Morales (Hispanic) applied for tenure. Plaintiff engaged in a campaign of harassment and bullying of Professors Lawton and Morales, which culminated in an attempt to deny their tenure and effectively end their careers. On August 31, 2017, Dean Rosato Perea initiated an investigation into Plaintiff's Misconduct pursuant to Chapter 4 of the Faculty Handbook, which was amended in 2016 and effective July 1, 2016. (*See* excerpts attached hereto as Exhibit A). On February 9, 2018, Dean Rosato Perea found Plaintiff committed Misconduct. Dean Rosato Perea recommended a two-year unpaid suspension, followed by a two-year ban on shared governance.

On May 1, 2018, Dean Rosato Perea and Plaintiff jointly selected three tenured faculty

members from outside the College of Law (the "Hearing Committee") to hear the charges of Misconduct.  The hearing began on January 11, 2019.  After reviewing thousands of pages of documents and observing fifteen witnesses testify over six full days, the Hearing Committee reached a unanimous decision: Plaintiff engaged in Misconduct warranting a one-year unpaid suspension followed by a ban from governance. On March 18, 2019, the Hearing Committee presented its recommendation to Acting Provost Salma Ghanem, which she accepted.

Plaintiff's suspension became effective July 1, 2019.  On July 3, 2019, Plaintiff appealed the Hearing Committee's decision to an appeals committee, which consisted of two Deans and three tenured faculty members outside the College of Law (the "Appeals Committee").  On December 12, 2019, the Appeals Committee upheld the Hearing Committee's recommendation.

## NORTHERN DISTRICT OF ILLINOIS LOCAL RULE 37.2

In May 2019, Defendants responded to Plaintiff's discovery requests and produced approximately 12,000 pages of documents.  Defendants identified the category or categories of documents they would not search for based on their objections and identified which documents were responsive to each request.  On August 28, 2019, the parties reached an agreement on ESI search terms, which included 26 unique searches, each with their own set of search terms, custodians, and time parameters.  (Dkt. No. 42, ¶ 7; *see also* Exhibit B).

In October and November 2019, Defendants completed their ESI collection and produced approximately 40,000 additional pages of production.  Pursuant to the schedule set by this Court, Defendants supplemented their discovery responses and issued a privilege log by December 18, 2019.  On February 10, 2020, Plaintiff represented to this Court she would identify any discovery disputes to Defendants' Title VII discovery by the first week of March 2020.  (Dkt. No. 68, ¶ 6).

On Thursday, March 5, 2020, Defendants' counsel contacted Plaintiff's counsel via email

regarding discovery. (Exhibit C). On Friday, March 6th, Plaintiff's counsel responded:

> As you may have seen, I have been out of the office this week and just got back in today. We are still working through all of the matters you identified. However, our document review is still ongoing, so I will not be able to provide anything final today. I hope to get everything out next week, and to the extent possible I will separately provide each response as soon as it is completed so you can begin your review more quickly.

It is difficult to understand how Plaintiff anticipated identifying discovery disputes in the first week of March if Plaintiff's counsel was not in the office. Defendants contacted Plaintiff again on March 11th and March 24th regarding discovery disputes.

On April 3, 2020, Plaintiff provided for the first time a twelve-page LR 37.2 discovery dispute letter regarding the Title VII discovery. On April 11, 2020, Plaintiff provided supplemental discovery responses. At 7:08 p.m. on April 19, 2020, Plaintiff raised for the first time concerns with Defendants' privilege log. On April 20, 2020 the parties engaged in a telephonic conference to discuss discovery disputes. On April 21, Plaintiff rejected a proposal to resolve privilege disputes. On April 24, 2020, Defendants provided a revised privilege log to address Plaintiff's discovery disputes, which Plaintiff failed to mention in her motion. Defendants' revised privilege log is attached hereto as Exhibit D.

## ARGUMENT

Plaintiff's Motion should be denied because Plaintiff: (I) failed to comply with LR 37.2; (II) may not obtain discovery about individuals who are not similarly situated; and (III) failed to show she is entitled to documents protected by the attorney-client privilege.

### I.    Plaintiff did not comply with Local Rule 37.2.

"The failure to comply with Local Rule 37.2 . . . is in itself grounds to deny a discovery motion." *Little v. JB Pritzker for Governor*, 2020 U.S. Dist. LEXIS 70668, at *19 (N.D. Ill. Apr. 22, 2020). Plaintiff concedes in her Motion she did not comply with LR. 37.2. (Dkt. No. 82 at p.

2, ¶ 8). Plaintiff attempts to place the blame for her failed compliance on this Court's deadline for motions to compel. To the contrary, the Court set a deadline based on Plaintiff's representation she would identify any discovery disputes by the first week of March. Instead, Plaintiff intentionally sandbagged Defendants, effectively preventing any meaningful back and forth between the parties to resolve disputes. Plaintiff's goal is clear: to cause DePaul as much pain through the discovery process as possible. Plaintiff's Motion should be denied.

## II. Plaintiff's Motion to compel discovery responses to RFP Nos. 16, 29, 30, 43, 44, 50, 51, 52, 53, 56, 95, 96, 97, 98, 99, and 100 should be denied because these requests seek discovery about individuals who are not similarly situated to Plaintiff.

Plaintiff's Motion to compel every personal slight, personnel issue or "complaint," whatever that term may mean, that has occurred at DePaul's College of Law in the last decade should be denied because it is overbroad and disproportionate to any value to this case. In *Balderston v. Fairbanks Morse*, 328 F.3d 309, 320 (7th Cir. 2003), the Seventh Circuit held the district court properly "limited discovery to the relevant corporate department, similarly situated employees, time period, and decisionmakers." *See also Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir. 1994) (when requesting discovery in a discrimination suit, the "other employees' circumstances [must be] close enough to [plaintiff]'s to make comparisons productive."). "To be similarly situated, an employee must be 'directly comparable…in all material respects.'" *Bagwe v. Sedgwick Claims Mgmt.*, 811 F.3d 866, 884 (7th Cir. 2016). A plaintiff must show the comparators "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 690 (7th Cir. 2008). Plaintiff's discovery requests fail under this standard.

### A. Discovery concerning "any attempts by Dean Rosato Perea to address bullying, discord, or toxicity from AY 2015/2016 to the present" is overbroad and

**disproportionate.**

Plaintiff's insistence DePaul produce "any attempts by Dean Rosato Perea to address bullying, discord, or toxicity from AY 2015/2016 to the present" (RFP No. 29) is disproportionate to the case, vague and overbroad. As an initial matter, Dean Rosato Perea testified before the Hearing Committee to the steps she took to build a positive work environment to limit bullying, discord or toxicity. DePaul produced that testimony. In addition, as set forth in the ESI agreed search terms, DePaul searched for the terms "bullying", "intimidation", and "aggression", among many others, for particular custodians, including Dean Rosato Perea, and produced responsive documents. *See* Exhibit B attached hereto for a copy of the parties' agreed-upon search terms. DePaul also produced the charges against Plaintiff and Professor Terry Smith.

Plaintiff now asks Dean Rosato Perea to produce every email, communication, or document she has created during her tenure as Dean related to building a positive work environment – every meeting held, committee created, cocktail hour arranged, or any of the other steps Dean Rosato Perea may have taken to build a positive work environment. This request is overbroad and would place a heavy burden on Defendants to produce additional discovery that will never be used in this litigation. Plaintiff's Motion to compel should be denied.

**B. Discovery concerning misconduct alleged to have occurred under different or mitigating circumstances, years before the challenged employment action, under different faculty handbooks, and/or under different decisionmakers is not relevant to Plaintiff's claims in this case.**

Plaintiff seeks documents concerning (A) Professor Julie Lawton's alleged abuse of staff in 2014 (RFP No. 30); (B) Professor Steven Greenberger's alleged apologies to other faculty members in AY 2003/2004 and 2009 (RFP No. 43); and (C) DePaul's alleged investigation into former Dean Gregory Mark in 2014 (RFP No. 44). (*See* Pl.' Mot. 5; *see also* Plaintiff's First Amended Complaint ("FAC") at ¶ 75(a), (e), and (g)). Plaintiff's Motion should be denied because

these requests are overbroad and seek information not relevant to Plaintiff's claims in this case. Dean Rosato Perea did not become Dean of the College of Law until AY 2015/2016. (Dkt. No. 64-3 at 3). Selma Ghanem became Acting Provost in 2019. The documents sought regarding Professors Lawton and Greenberger, and former Dean Mark, all predate Dean Rosato Perea by years and predate Plaintiff's discipline by many more years. Moreover, the nature of the alleged disputes regarding Professor Lawton and Professor Greenberger are not comparable to Plaintiff's allegations of Misconduct. The Faculty Handbook discipline process was not applicable to Dean Mark, or any other Dean. These purported incidents cannot provide any insight into the motivations of the decisionmakers at issue in this litigation. *See Little v. Ill. Dep't of Revenue*, 369 F.3d 1007, 1012 (7th Cir. 2004) ("A similarly-situated employee must have been disciplined, or not, by the same decisionmaker who imposed an adverse employment action on the plaintiff."); *Wilkosz v. Hudson Respiratory Care, Inc.*, 2000 U.S. Dist. LEXIS 22486, at *28-29 (N.D. Ill. Nov. 13, 2000). Likewise, this information is not relevant to establishing a "course of conduct" (*see* Pl.'s Mot. at 5) on Plaintiff's breach of contract claim because the alleged "contract" did not exist at the time. (*See* "Brief Factual Summary" *supra*). Plaintiff's Motion with respect to RFP Nos. 30, 43, and 44 should be denied.

**C. Discovery concerning complaints against other faculty members over a ten-year period of time and involving different decisionmakers is not relevant to Plaintiff's claims in this case.**

Plaintiff also seeks additional documents concerning any OIDE or non-OIDE complaints asserted against any College of Law faculty member over the past 10 years (RFP Nos. 16, 51, 52, 53). (Pl.'s Mot. at 6). Defendants already have produced voluminous documentation regarding Plaintiff's and Professor Smith's OIDE complaints and Professors Morales' and Lawton's OIDE complaints against Plaintiff and Professor Smith. (Dkt. No. 82-2 at 12-13). Further, the agreed

ESI search terms include "OIDE", "Chapter 4", "harassment", "bullying" and many other related terms for multiple custodians over various time periods. (Exhibit B).

Plaintiff's request should be denied because: (A) the requests seek information about complaints that predate any of the decisionmakers (*see* Section II.B., *supra*); and (B) the requests are overbroad in temporal scope by seeking information over a ten-year time period (*see* Section II.B., *supra*).[1] The Hearing Committee, not OIDE, found Plaintiff engaged in Misconduct under the Faculty Handbook, a separate issue from any OIDE policy. Further, Plaintiff seeks "non-OIDE complaints" without identifying or defining a "non-OIDE complaint." Is Plaintiff seriously seeking documents concerning every time there is a concern raised regarding what another law professor has done, said, or written? Such a search, outside of ESI, is not comprehensible. Plaintiff agreed to specific ESI search terms and should not now be allowed to enlarge those terms. Plaintiff's Motion with respect to RFP Nos. 16, 51, 52, and 53 should be denied.

### D. Discovery concerning any Chapter 4 proceeding within the past ten-years is not relevant to Plaintiff's claims in this case.

Plaintiff also seeks documents concerning any Chapter 4 disciplinary proceeding within the past 10 years, regardless of the College or Department involved in the proceeding, the context of the proceeding, the underlying allegations involved in the proceeding, or any other differentiating circumstances surrounding the proceeding (RFP No. 50). (Pl.'s Mot. at 6-7). Plaintiff argues that because the university Provost ultimately accepts or rejects the recommendations of the Hearing Committee, a university-wide search is warranted, though her request is not limited to Acting Provost Ghanem (who accepted the Hearing Committee's recommendation in this case), nor is it limited to Chapter 4 proceedings where a Hearing

---

[1] During the parties' April 20th meet and confer, Defendants informed Plaintiff's counsel that they were not aware of any formal complaints brought against Helmut Epp, whether to OIDE or any other DePaul office.

Committee sent a recommendation to the Provost.  (*Id.* at 7).

Defendants have produced thousands of documents related to the Chapter 4 proceedings against Plaintiff and Professor Smith.  (Dkt. No. 82-2 at 30-31).  Plaintiff's request for all other documents related to any Chapter 4 proceeding, university-wide, over the past 10 years, and without regard to the provost involved or whether a Hearing Committee was formed, should be denied because: (A) decisions made by different decisionmakers are not probative of whether Plaintiff was subject to disparate treatment (*see* Section II.B., *supra*); (B) the requests are overbroad in temporal scope by seeking information over a 10-year time period (*see* Section II.B., *supra*); and (C) complaints against any faculty members for conduct that is not comparable to Plaintiff's conduct is not a proper subject of discovery (*see* Section II.B., *supra*).

### E. Discovery concerning Professor Don Herman is not required because Professor Herman is not a comparator.

Plaintiff seeks to compel production of documents related to Professor Don Herman's use of the "n word" in two classes in February 2018 related to the following hypothetical: "a white supremacist attends the funeral of a civil rights leader and hurls the word at funeral attendees.  The crowd comes after him.  Can he shoot them and claim self defense?" (RFP Nos. 95-98).  (Pl.'s Mot. at 7; FAC at ¶ 75(b)).  The Chapter 4 process allows a party to resolve informally a potential disciplinary matter with the University Representative without going through the long and tedious process of issuing formal charges, exchanging information, convening a hearing committee, holding a hearing, and having an appeal of the hearing committee decision.  Plaintiff rejected an informal resolution at multiple times.  Having demanded the full hearing and having lost, Plaintiff now seeks to compare herself to another professor who opted for informal resolution.  Plaintiff's comparison is akin to a defendant demanding a bench trial, losing the trial, and then complaining other defendants received a less harsh punishment when they settled their cases before trial.

Where a plaintiff alleges her employer disciplined her more harshly than a comparator, the plaintiff must show the comparator engaged in "comparable rule or policy violations" without differentiating or mitigating circumstances. *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010); *see also Bagwe*, 811 F.3d at 884. Here, Professor Herman's conduct is not comparable to Plaintiff's conduct because an informal resolution stands in stark contrast to a full hearing before a Hearing Committee. Plaintiff's Motion should be denied.

## F. Discovery concerning a confidential settlement agreement with a third-party former employee is not relevant to Plaintiff's claims in this case.

Plaintiff also seeks to compel production of any settlement agreement between DePaul and Professor Smith. (Pl.'s Mot. at 9). DePaul has produced the Chapter 4 disciplinary documents pertaining to Professor Smith. DePaul has informed Plaintiff's counsel the Chapter 4 proceedings against Professor Smith were withdrawn once Professor Smith was no longer a DePaul employee. Plaintiff is not satisfied. Plaintiff wants this information to gauge her own settlement demands rather than for any possible relevance to this case. These discovery requests should be denied.

"[T]he public policy favoring settlements weights against compelling production of a confidential settlement agreement . . . ." *Homeland Ins. Co. v. Health Care Serv. Corp.*, 330 F.R.D. 180, 182-83 (N.D. Ill. 2019). This is because "the dissemination of agreements intended by the parties to be confidential carries a 'significant potential for abuse' which could 'implicate privacy interests of litigants and third parties.'" *Grove Fresh Distributors v. John Labatt Ltd.*, 888 F. Supp. 1440-41 (N.D. Ill. 1995) (citing *Seattle Times Co. v. Rinehart*, 467 U.S. 20, 34 (1984)). "In fact, confidential settlement agreements are likely in the long run to best serve the interests of the public and the parties alike: 'Whatever the value of disclosure, it should not obscure the strong public interest in, and policy objectives furthered by, promoting settlement.' Thus, 'absent special circumstances, a court should honor confidentialities that are bargained-for elements of settlement

agreements.'" *Id.* at 1441 (citations omitted). Here, Plaintiff has not, and cannot, show any special circumstances that would override this strong public policy and warrant disclosure of any confidential settlement agreement between DePaul and Professor Smith. Plaintiff certainly cannot assert the resolution of a lawsuit can have any relevance to the level of discipline issued to Plaintiff.

None of the cases cited in Plaintiff's Motion change that outcome. For instance, *Channelmark Corp. v. Destination Prod. Int'l*, 2000 U.S. Dist. LEXIS 9854 (N.D. Ill. July 7, 2000), involved a commercial dispute where the third-party settlement agreement was relevant to proving intent in a fraudulent inducement claim. *Thermal Design, Inc. v. Guardian Bldg. Prod., Inc.*, 270 F.R.D. 437 (E.D. Wis. 2010), another commercial dispute, held a third-party settlement agreement should be produced where it was undisputed the agreement was relevant to the litigation. Finally, *E.E.O.C. v. Rush Prudential Health Plans*, 1998 U.S. Dist. LEXIS 4170 (N.D. Ill. Mar. 31, 1998), found the EEOC had a right to the settlement agreement to determine whether the EEOC should continue the litigation on behalf of the employee. None of these cases found a plaintiff has a right to discover a confidential settlement agreement with a third-party.

Courts in this circuit routinely have denied motions to compel production of confidential settlement agreements with other employees, even where the information is alleged to be relevant. *See, e.g.*, *Butta-Brinkman v. Fin. Collection Agencies Int'l*, 164 F.R.D. 475, 477 (N.D. Ill. 1995) (denying motion to compel confidential settlement agreements with employees in other similar employment cases); *Davenport v. Ind. Masonic Home Found., Inc.*, 2003 U.S. Dist. LEXIS 6350, at *5-6 (S.D. Ind. Mar. 27, 2003) (denying motion to compel a confidential settlement agreement with another employee). Pursuant to the strong policy considerations favoring settlement, and cases like *Butta-Brinkman* and *Davenport*, Plaintiff's Motion should be denied.

### G. Discovery concerning non-College of Law faculty members is not relevant to Plaintiff's claims in this case.

Plaintiff seeks to compel production of documents related to the decision to deny tenure to Professor Namita Goswami, a professor in the Philosophy Department, in AY 2009-2010. (Pl.'s Mot. at 10; FAC ¶ 53). Plaintiff's request should be denied because these allegations: (A) involve individuals outside the College of Law (*see Luckett v. Menasha Material Handling Corp.*, 2005 U.S. Dist. LEXIS 22064, at *62 (N.D. Ill. Sept. 29, 2005)); (B) took place more than ten years ago (*see* Section II.B., *supra*); (C) involved different decisionmakers (*see* Section II.B., *supra*); (D) involved a different faculty handbook (*see* "Brief Factual Summary" *supra*); and (E) involved a tenure decision rather than allegations of Misconduct. For all these reasons, Plaintiff's Motion with respect to RFP No. 56 should be denied.

## III. Plaintiff has failed to show that she is entitled to documents protected by the attorney-client privilege and/or work product doctrines.[2]

Plaintiff's Motion to compel privileged documents should be denied because: (A) the attorney-client privilege and work product doctrine protect draft OIDE investigative memoranda prepared in anticipation of receiving legal advice from in-house counsel; (B) the attorney-client privilege applies to DePaul's in-house counsel's legal advice to employees acting within the scope of their job duties; and (C) "at-issue" waiver does not occur where an employer does not put the substance of in-house counsel's legal advice in issue in the case.

### A. The attorney-client privilege and work product doctrine protect documents and communications related to a confidential internal investigation where, as here, they are created in anticipation of receiving legal advice from in-house counsel and in-house counsel reviews the materials and provides advice.

Plaintiff seeks to compel production of documents and communications related to a draft investigative memorandum prepared by OIDE investigator Arlette Johnson. (Pl.' Mot. at 11). Ms.

---

[2] On April 24, 2020, Defendants served Plaintiff with their First Amended Privilege Log. Defendants have attached their First Amended Privilege Log to this Response as Exhibit D.

Johnson prepared the draft memorandum in anticipation of seeking legal advice from DePaul's in-house counsel (hereinafter, "Draft Memorandum"). Plaintiff specifically challenges the following entries on Defendants' privilege log: Nos. 15-18, 1937, 1939, 1941, 1945, 1947, and 1952. (*Id.*).[3]

"The elements of the attorney-client privilege are: 1) Where legal advice of any kind is sought 2) from a professional legal advisor in his capacity as such, 3) the communications related to that purpose, 4) made in confidence 5) by the client, 6) are at his instance permanently protected 7) from disclosure by himself or by the legal advisor, 8) except the protection [may] be waived." *Fleischmann v. McDonald's Corp.*, 244 F.R.D. 434, 439 (N.D. Ill. 2007). The work product doctrine shields "1) 'documents and tangible things otherwise discoverable'; 2) prepared 'by or for another party or by or for that other party's representative'; 3) 'in anticipation of litigation or for trial.'" *Fleischmann*, 244 F.R.D. at 440 (citing Fed. R. Civ. P. 26(b)(3)).

Here, all of the elements for the attorney-client privilege and work produce doctrine are met because Ms. Johnson prepared the Draft Memorandum in anticipation of seeking legal advice from DePaul's in-house counsel, and the Draft Memorandum was treated as confidential given the sensitive information contained within it, including, for instance, statements obtained from witnesses and preliminary findings of fact. DePaul's in-house counsel, after receiving a copy of the Draft Memorandum, provided comments to and legal advice on Ms. Johnson's draft. These facts show the Draft Memorandum was created in anticipation of litigation. On this basis, *Musa-Muaremi v. Florists' Transworld Delivery, Inc.*, 270 F.R.D. 312 (N.D. Ill. 2010), is distinguishable. Plaintiff's Motion with respect to the confidential Draft Memorandum should be denied. *See McCook Metals L.L.C. v. Alcoa, Inc.*, 192 F.R.D. 242, 255 (N.D. Ill. 2000) (draft letter

---

[3] Although Plaintiff's Motion refers to six separate privilege log entries, those entries are different versions of the same Draft Memorandum, with and without in-house counsel's comments.

and intraoffice memorandum were privileged from discovery "because it contains legal advice, is attached to a privileged document for the purpose of securing legal advice, and is and shared among operating unit personnel responsible for a project, it is within the ambit of the privilege").

Plaintiff also asserts that email communications among OIDE employees related to the Draft Memorandum are not privileged. (Pl.'s Mot. at 11). The OIDE employees at issue communicated with DePaul's in-house counsel regarding the Draft Memorandum and, therefore, the attorney-client privilege attaches. (*See* Exhibit D, Nos. 15-18).

### B. The attorney-client privilege protects communications where in-house counsel conveys legal advice to employees acting within the scope of their job duties.

Plaintiff seeks to compel production of: (A) communications between DePaul's in-house counsel and the Faculty Council (Nos. 2,492-2,434); and (B) communications between DePaul's in-house counsel and members of the Chapter 4 Hearing Committee (Nos. 2,292-2,403). (Pl.'s Mot. at 12). Plaintiff claims the attorney-client privilege does not attach to these communications because of a conflict of interest between DePaul's in-house counsel, on the one hand, and the Faculty Council, Hearing Committee, and DePaul's administration on the other. (*Id.*).

Illinois Rules of Professional Conduct 1.13 and 1.7-1.9, which are not mentioned by Plaintiff, govern representation of an organization by a lawyer and conflicts of interest. Rule 1.13 provides, "[a] lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents." Ill. R. Prof. Cond. 1.13(a). Contrary to Plaintiff's assertions, the Faculty Council and Hearing Committee are not separate legal entities from DePaul requiring separate counsel or even capable of creating a conflict between clients. (Pl.'s Mot. at 12-13). They are all DePaul operating in an official capacity on behalf of DePaul. DePaul cannot have a legal conflict with itself. Even if a non-legal conflict existed, which it did not, the attorney-client privilege applies in situations such as this. *See, e.g., Fleischmann*, 244 F.R.D. at 439-40 ("If

the attorney-client privilege could not be asserted in a case such as this, in which a company's counsel [is engaged in an internal company matter], open communication between counsel and employees would be compromised . . .").  Plaintiff's Motion should be denied.

### C. The "at-issue" waiver doctrine does not apply where, as here, an employer does not rely on attorney-client privileged communications to establish a defense to liability in the case.

Finally, Plaintiff claims Defendants waived the attorney-client privilege with respect to Entries 482-87 and 1,730-53 because Defendants asserted a statute of limitations defense in their Motion to Dismiss.  (Pl.'s Mot. at 14-15; *see also* Dkt. No. 23).  "At-issue waiver occurs when the privilege holder 'asserts a claim or defense by disclosing or describing an attorney-client communication.'" *Abbott Labs. v. Andrx Pharms., Inc.*, 2006 U.S. Dist. LEXIS 55647, at *24 (N.D. Ill. July 25, 2006).  "To waive attorney-client privilege by an at-issue waiver, the privilege holder must inject a factual or legal issue into the case." *Id.* at *25.  "Privileged communications, however, do not become discoverable simply because they relate to an issue in the litigation." *In re Fluidmaster, Inc.*, 2016 U.S. Dist. LEXIS 154618, at *35 (N.D. Ill. Nov. 8, 2016).

Defendants have not put the substance of any attorney-client privileged communication at issue.  As stated in Defendants' Motion to Dismiss, DePaul notified Plaintiff she was not selected for the Committee on March 17, 2014, and DePaul communicated OIDE investigation result on May 14, 2014.  (Dkt. No. 23 at 5, Ex. A).  The fact that in-house counsel may have reviewed and discussed this matter ***after that date*** does not change the date on which Plaintiff's claim accrued.  Plaintiff's claim is time-barred and her desperate search for a document to suggest otherwise does warrant waiving DePaul's attorney-client privilege.

For the foregoing reasons, Defendants request that this Court deny Plaintiff's First Motion to Compel Discovery (Dkt. No. 82) in its entirety.

Dated: May 4, 2020

Respectfully submitted,

DePaul University and Jennifer Rosato Perea

By: /s/ Brian P. Paul

One of Their Attorneys

Brian P. Paul
Kerryann M. Haase
Michael K. Chropowicz
Michael Best & Friedrich LLP
444 West Lake Street, Suite 3200
Chicago, Illinois 60606
Telephone: 312.222.0800

<u>**CERTIFICATE OF SERVICE**</u>

I, hereby certify that on May 4, 2020, I electronically filed the foregoing ***Defendants'
Response in Opposition to Plaintiff's First Motion to Compel Discovery*** with the Clerk of the
Court using the CM/ECF system, which will send notification of such filing to the following
counsel of record:

**Margaret Ann Angelucci**
**Matthew Pierce**
Asher, Gittler, Greenfield, Cohen & D'Alba
200 West Jackson Boulevard, Suite 720
Chicago, Illinois 60606
Email: <u>maa@ulaw.com</u>
Email: <u>mjp@ulaw.com</u>

/s/ Brian P. Paul
Attorney for Defendants DePaul University
and Jennifer Rosato Perea
Michael Best & Friedrich LLP
444 West Lake Street, Suite 3200
Chicago, Illinois 60606
Telephone: 312.222.0800
Email: <u>bppaul@michaelbest.com</u>